IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

  vs.

THE UNKNOWN HEIRS, DEVISEES, OR
LEGATEES OF ERLINDA SEDILLO, DECEASED;
ERNESTO SEDILLO OR ERNEST SEDILLO,
DECEASED; OCCUPANTS, WHOSE TRUE
NAMES ARE UNKNOWN, IF ANY

   Defendants.

## C O M P L A I N T

  The United States of America for its Complaint against the Defendants states the

following:

  1.  This action is brought under 28 U.S.C.§ 1345 and 12 U.S.C. §1715 *et seq.*

on behalf of the United States Department of Housing and Urban Development ("HUD"),

an agency of the United States, by the United States Attorney for the District of New

Mexico, as authorized by the Attorney General.

  2.  Venue properly lies within this Court's district.

  3.  On or about March 26, 1999, Erlinda Sedillo and Ernest Sedillo, executed

and delivered to Unity Mortgage Corp. DBA The Reverse Mortgage Company, its

successors and assigns, an Adjustable Rate Note (Home Equity Conversion),

evidencing a debt with variable interest from the date of the Note at the original Note

rate of 5.9400% per year.   A copy of the Note is attached hereto as Exhibit "A", and

made a part hereof as if fully set forth herein ("Note").

  4.  Simultaneously with the execution and delivery of the Note, and in order to

secure the payment of said Note, Erlinda Sedillo and Ernest Sedillo, executed and delivered to Unity Mortgage Corp. DBA The Reverse Mortgage Companuy, an Adjustable Rate First Mortgage (Home Equity Conversion), a copy of which is attached hereto as Exhibit "B", and made a part hereof as if fully set forth herein ("Mortgage"). Said Mortgage was duly recorded on March 30, 1999, in Book 9905, Pages 3155, Records of Bernalillo County, New Mexico.   The Mortgage is a valid lien on the following-described real property ("Real Property") subject only to any outstanding ad valorem taxes and liens recorded pursuant to NMSA § 3-36-1 et seq.

> Lot Numbered Fourteen (14) in Block Numbered One (1) of the Swin Mar Addition, An Addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the map of said addition, filed in the Office of the County Clerk of Bernalillo County, New Mexico April 3, 1958.

More commonly known as: 1412 56th Street NW Albuquerque, NM 87105.

5.      On or about March 26, 1999, Bank of America, N.A. conveyed and assigned its interest in the Note and Mortgage to the Secretary of Housing and Urban Development.   Said assignment was recorded in the Records of Bernalillo County, New Mexico, on December 31, 2008 as Document No. 2009004435, a copy of which is attached hereto as Exhibit "C", and made a part hereof as if fully set forth herein.

6.      Plaintiff is informed that Erlinda Sedillo died on July 7, 2013, and a copy of her Certificate of Death is attached hereto as Exhibit "D", and made a part hereof as if fully set forth herein.   There may be other persons unknown to Plaintiff who may make some claim of interest or right in and to the Real Property as heirs of Erlinda Sedillo. Plaintiff has made due search and inquiry to ascertain the names, residences or whereabouts of such persons, however, such information is unknown and cannot be

2

ascertained.   Further, such parties have been made Defendants in this cause under the name and style as:   The Unknown Heirs, Devisees, or Legatees of Erlinda Sedillo, Deceased.

7.      Plaintiff is informed that Ernest Sedillo died on February 1985, and a copy of his Death Record is attached hereto as Exhibit "E", and made a part hereof as if fully set forth herein.   There may be other persons unknown to Plaintiff who may make some claim of interest or right in and to the Real Property as heirs of Ernest Sedillo. Plaintiff has made due search and inquiry to ascertain the names, residences or whereabouts of such persons, however, such information is unknown and cannot be ascertained.   Further, such parties have been made Defendants in this cause under the name and style as:   The Unknown Heirs, Devisees, or Legatees of Ernest Sedillo, Deceased.

8.      Under paragraph 9 of the Mortgage and paragraph 7 of the Note, default occurred when the Real Property was no longer the principal residence of Erlinda Sedillo.

9.      The Mortgage provides that in the event of default of the Note, the Mortgage is subject to foreclosure as provided by law.   The Note is in default, and the United States is entitled to have the Mortgage foreclosed.   All conditions precedent to enforcement of the Note and foreclosure of the Mortgage have occurred.

10.      Defendant Occupants, Whose True Names are Unknown, if any, may claim an interest in the subject Real Property by reason of possession of the Real Property.

3

11.     After all just credits and offsets are applied on the Note, there remains owing principal and interest in the amount of $95,274.60 as of November 8, 2016, plus interest at the daily rate of $6.00 from March 26, 1999 to the date of judgment, with interest accruing at the legal rate thereafter until paid, plus the amount of any advances, including ad valorem taxes, costs, expenses, and the United States District Court Clerk filing fee pursuant to 28 U.S.C. § 2412(a)(2).

**WHEREFORE**, the United States requests the following:

A.     *In rem* judgment for principal and accrued interest to November 8, 2016 in the amount of $95,274.60, plus interest accruing from November 8, 2016 at the daily rate of $6.00 to the date of judgment, plus interest thereafter at the legal rate until paid, plus the amount of any advances, including ad valorem taxes, costs, expenses, and the United States District Court Clerk filing fee pursuant to 28 U.S.C. § 2412(a)(2);

B.     The Mortgage be foreclosed;

C.     The United States' lien on the Real Property be declared a valid lien subject only to any outstanding taxes and/or liens recorded pursuant to N.M.S.A. § 3-36-1 *et seq.*;

D.     The Court appoint the United States Marshal as receiver to take possession of, advertise, and sell the Real Property to satisfy the outstanding indebtedness to the United States together with all costs and expenses of the foreclosure sale;

E.     The sale be conducted by the Marshal for cash unless the United States should be the highest and best bidder in which case the United States shall be allowed

4

up to the amount of its judgment as credit on its bid;

  F. The Marshal submit a report of the sale to the Court for approval and,

upon approval of the report, the Marshal be released and discharged;

  G. The purchaser at the foreclosure sale take immediate possession and title

to the Real Property free and clear of any and all claims of any of the defendants;

  H. The proceeds of the sale be applied as follows:   First, to the payment of

the costs and expenses of foreclosure, taxes, advances and applicable statutory fees;

next, to the payment and satisfaction of the judgment of the United States; and the

balance, if any, to the registry of the Court pending further order or judgment of this

Court;

  I. All rights, claims, interests, title, or equity of any defendant and any person

claiming through any defendant be barred and foreclosed as to the Real Property;

  J. The redemption period be 30 days from the date of the sale.

JOHN C. ANDERSON
United States Attorney


*Filed electronically on 6/25/18*
MANUEL LUCERO
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM   87103
(505) 224-1467
manny.lucero@usdoj.gov

*Sedillo, Erlinda*
*78,000*



# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. 361:2335002-952/255
996752120004

**MARCH 26        , 1999**

**1412 56TH STREET NW, ALBUQUERQUE, NEW MEXICO 87105**
[Property Address]

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means
**UNITY MORTGAGE CORP. DBA THE REVERSE MORTGAGE COMPANY**

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **MARCH 26, 1999** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of **FIVE AND 940/1000** percent ( 5.9400 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place

Payment shall be made at **UNITY MORTGAGE CORP. DBA THE REVERSE MORTGAGE CO,**
**7840 ROSWELL ROAD BUILDING 300 SUITE 3400,**
**ATLANTA, GEORGIA  30350-6877**                                    , or any such other place as Lender
may designate in writing by notice to Borrower.

### (C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date

The interest rate may change on the first day of **MAY, 1999**                , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **ONE AND 200/1000** percentage points ( 1.20000 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above **FIFTEEN AND 940/1000** percent ( 15.94000 %).

### (E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.



EXHIBIT

A

PENGAD 800-631-6989

*ES*

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**
    Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:
    (i)  Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or
    (ii)  Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION**
    If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Date:   March 26, 1999

                                                           (Seal)
ERLINDA SEDILLO                               -Borrower

                                                           (Seal)
                                                         -Borrower

All right, title and interest of the undersigned to the within credit instrument is hereby assigned to the secretary of Housing and Urban Development of Washington, D.C., his/her successors and assigns.

Pay To The Order Of

WITHOUT RECOURSE
UNITY MORTGAGE CORP d/b/a
THE REVERSE MORTGAGE

Art Bottinick, Assistant V.P.

RECORD AND RETURN TO:
UNITY MORTGAGE CORP.
7840 ROSWELL ROAD BUILDING 300 SUITE 301
ATLANTA, GEORGIA 30350



RETURN TO FIRST AMERICAN TITLE CO. G7 #3990998 - NSA
Academy

——————————————— [Space Above This Line For Recording Data] ———————————————

**State of New Mexico**                    FHA Case No. 361:2335002-952/255
                                           996752120004

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on   **MARCH 26, 1999**        . The mortgagor is
**ERLINDA SEDILLO , AN UNMARRIED PERSON**

whose address is   **1412 56TH STREET NW,**
**ALBUQUERQUE, NEW MEXICO 87105**                                    ("Borrower").
This Security Instrument is given to
**UNITY MORTGAGE CORP. DBA THE REVERSE MORTGAGE COMPANY**

                                                                    , which is
organized and existing under the laws of   **THE STATE OF GEORGIA**      , and whose address is
**7840 ROSWELL ROAD BUILDING 300 SUITE 301, ATLANTA, GEORGIA 30350**
                            ("Lender").  Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**ONE HUNDRED SEVENTEEN THOUSAND AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $   **117,000.00**        ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in   **BERNALILLO**            County, New Mexico:

**MAXIMUM CLAIM AMOUNT: $78,000.00**

XD52 : 12/96                            Page 1 of 8                    *E S*

EXHIBIT
B

PENGAD 800-631-6989



Judy D. Woodward   Bern. Co.   MTG   R 21.00 Bk-9985 Pg-3155

1999043286
5269277
Page:  1 of 8
03/30/1999 03:15P
Bk-9985 Pg-3155

LOT NUMBERED FOURTEEN (14) IN BLOCK NUMBERED ONE (1), OF SWIN-MAR ADDITION, AN ADDITION TO THE CITY OF ALBUQUERQUE, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE MAP OF SAID ADDITION, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO, ON APRIL 3, 1958, IN PLAT BOOK C3, FOLIO 132.

which has the address of   **1412 56TH STREET NW**
                                                [Street]

**ALBUQUERQUE**          , **NEW MEXICO**          **87105**          ("Property Address");
   [City]                       [State]            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

1999043286
5203277
Page:   2 of 8
03/30/1999 03:15P
Bk-9905 Pg-3155

Judy D. Woodward   Bern. Co. MTG      R 21.00

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 11/96

Page 3 of 8

1999043286
5269327
Page: 3 of 8
03/30/1999 03:15P
Bk-9905 Pg-3155

Judy D. Woodward   Bern. Co.   MTG   R 21.00

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall



1999043286
5293277
Page: 4 of 8
03/30/1999 03:15P
Bk-9985 Pg-3155

be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a)  **Modification.**  Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b)  **Tax Deferral Programs.**  Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c)  **Prior Liens.**  Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;  (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a)  **Second Security Instrument.**  In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b)  **Relationship of First and Second Security Instruments.**  Payments made by the Secretary shall not be included in the debt under the Note unless:

(i)  This Security Instrument is assigned to the Secretary; or

(ii)  The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c)  **Effect on Borrower.**  Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i)  Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii)  Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

1999943206
5203227
Page:  5 of 8
03/30/1999 03:15P
Bk-9905 Pg-3155

Judy D. Woodward   Bern. Co.   MTG   R 21.00

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

1999043286
5203277
Page: 6 of 8
03/30/1999 03:15P
Bk-9905 Pg-3155
XD53     Judy D. Woodward   Bern. Co.   MTG     R 21.00

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of         **5.9400** % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of   **MAY, 1999**                , and on   ☐   that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FIFTEEN AND 940/1000**              percent (    15.94000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Redemption Period.** If this Security Instrument is foreclosed, the redemption period after judicial sale shall be one month.

Judy D. Woodward    Bern. Co.  MTG        R 21.00

1999043286
5263277
Page:  7 of 8
03/30/1999 03:15P
Bk-9905 Pg-3155

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider   ☐ Shared Appreciation Rider   ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                       ERLINDA SEDILLO                -Borrower

_____   _____ (Seal)
                                                                      -Borrower

──────────── [Space Below This Line For Acknowledgment] ────────────

**STATE OF  NEW MEXICO**          ,          **BERNALILLO    COUNTY SS:**

I,          Nancy S. Apodaca                    , a Notary Public, certify that
**ERLINDA SEDILLO**

personally known to me to be the same person whose name(s) **IS**       subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that **SHE**       signed and delivered the instrument as **HER**       free and voluntary act, for the uses and purposes herein set forth.
        Dated                       ,

                                                                      (Seal)

Name:   Nancy S. Apodaca
Title:  Escrow Officer

My Commission Expires:   02/12/2001

XD55 : 05/97

Judy D. Woodward   Bern. Co.   MTG   R 21.00

1999043286
SE03827
Page:  8 of 8
03/30/1999 03:15P
Bk-9985 Pg-3155

When Recorded Mail to:

BANK OF AMERICA
ATTN:
190 QUEEN ANNE AVENUE NORTH, SUITE 400
SEATTLE, WA 98109,

Doc# 2009004435
01/15/2009 08:28 AM  Page: 1 of 1
RSSN R:$9.00 M. Toulouse Oliver, Bernalillo County

_____SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

FHA CASE NO. 3612335002952                                      LOAN NO. 110377

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the current mortgagee and undersigned, 'Bank of America N.A. as Successor by asset acquisition to Seattle Mortgage Company/Seattle Savings Bank' , 190 Queen Anne Avenue North, Suite 400, Seattle, WA 98109, hereby grants, assigns and transfers to

**The Secretary of Housing and Urban Development**
whose address is 451 Seventh Street, S.W., Washington, DC 20410

all beneficial interest under that certain Mortgage dated **March 26, 1999** in which **ERLINDA SEDILLO, AN UNMARRIED PERSON**, having an address of 1412 56th Street NW, Albuquerque, New Mexico 87105 is Mortgagor, and Unity Mortgage Corp. DBA The Reverse Mortgage Company, whose address is 7840 Roswell Road Building 300 Suite 301, Atlanta, Georgia 30350, which is organized and existing under the laws of the State of Georgia, is Mortgagee, recorded on **March 30, 1999** under Book No. 9905, Page No. 3155 under Instrument No. 1999043286 with a maximum principal amount of **$117,000.00** in the Official Records of Bernalillo County, New Mexico.

Said Mortgage having been assigned by **Unity Mortgage Corp. DBA The Reverse Mortgage Company** to Seattle Mortgage Company having an address of 190 Queen Anne Avenue North, Suite 100, Seattle, WA 98109, recorded on March 29, 2000 under Book No. A3 , Page No. 9739, under Instrument No. 2000029876 in the Official Records of Bernalillo County, New Mexico.

The real property situated in said county described as follows:
LOT NUMBERED FOURTEEN (14) IN BLOCK NUMBERED ONE (1), OF SWIN-MAR ADDITION, AN ADDITION TO THE CITY OF ALBUQUERQUE, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE MAP OF SAID ADDITION, FILED IN THE OFFICE OF THE COUNTY CLERK OF BERNALILLO COUNTY, NEW MEXICO, ON APRIL 3, 1958, IN PLAT BOOK C3, FOLIO 132.

Having an address of: 1412 56th Street NW, Albuquerque, New Mexico 87105

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to be accrued under said Mortgage.

Section 275: The assignment is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bona fide obligation.

Date: 12/31, 2008

BANK OF AMERICA N.A. as Successor by Asset
Acquisition to Seattle Mortgage Company/ Seattle
Savings Bank

_____
CHARLIE JONES, SR VICE PRESIDENT

State of Washington    )
                       ) SS:
County of King         )

On 12/31 , 2008 before me, the undersigned personally appeared **CHARLIE JONES, SR VICE PRESIDENT, BANK OF AMERICA** personally known to me or provided to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Emily C. Thursby, Notary Public
in and for the State of Washington
My commission expires: 12/19/2011

EXHIBIT

C

# ADJUSTABLE RATE SECOND NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. 361:2335002-952/255
996752120004

**MARCH 26**       **, 1999**

**1412 56TH STREET NW, ALBUQUERQUE, NEW MEXICO 87105**
[Property Address]

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated   **MARCH 26, 1999**         ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of **FIVE AND 940/1000**         percent (     5.9400   %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or "Second Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

## 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
**(B) Place**
Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, S.W., Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.
**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

## 5. INTEREST RATE CHANGES
**(A) Change Date**
The interest rate may change on the first day of    **MAY, 1999**            , and on `__` that day of each succeeding year   X   the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.
**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.
**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of  **ONE AND 200/1000** percentage points (    1.20000%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.
**(D) Limits on Interest Rate Changes**
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above     **FIFTEEN AND 940/1000**    percent (    15.94000 %).
**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

### 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

### 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

### 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or at any other address designated by the Secretary.

### 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

### 11. RELATIONSHIP TO FIRST NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements of the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

**(C) Notice of Interest Rate Adjustments**
    Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

**12. SHARED APPRECIATION**
    If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.


Date:   March 26, 1999                                                    (Seal)
                                    ERLINDA SEDILLO                        -Borrower


                                                                          (Seal)
                                                                          -Borrower





Lexis Advance® Public Records

 

## Lexis Advance®
## Public Records

View: Results List

🔔 View Alerts | Coverage | Tips | ⓘ

**Terms:** first-name(**Ernest**) last-name(**Sedillo**) city(**Albuquerque**) state(**NM**) jurisdiction(**NM**) source type(**SSN D...** ( Edit Search | New Search )

2 of 2 ☐ Select for Delivery

## Death Record

This data is for informational purposes only.

### Decedent Information

| | |
|---|---|
| **Name:** | SEDILLO, ERNESTO |
| **Address:** | NM |
| | BERNALILLO COUNTY |
| **LexID(sm):** | 002293732079 |

### Decedent Personal Information

| | |
|---|---|
| **SSN:** | 525-16-XXXX |
| **Age:** | 61 |
| **Date of Death:** | 02/1985 |
| **Date of Birth:** | 03/1923 |

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should b purposes only and is not an official record. Certified copies may be obtained from that individual state's Depar

**Your DPPA Permissible Use:** On Government Behalf
**Your GLBA Permissible Use:** Legal Compliance

### Further Searches
Locate a Person
(Nationwide)



EXHIBIT

E

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS**
Heirs of Erlinda Sedillo, Deceased; Ernesto Sedillo or Ernest Sedillo, Deceased, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Bernalillo___
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Manuel Lucero, Assistant United States Attorney
P.O. Box 607 Albuquerque, NM 87103
(505) 224-1467

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ |  |  | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury |  | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability |  | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** |  | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act |  | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty |  |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** |  |  |
|  | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. § 1345; 12 U.S.C. § 1715

Brief description of cause:
Complaint for foreclosure

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 95,274.60

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE 06/25/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Manuel Lucero, Assistant United States Attorney

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____